IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

      v.                                                          Criminal No. 3:25cr62 (DJN)

MARCUS KEON RUFFIN,
        Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Marcus Keon Ruffin's ("Defendant") Motion to Suppress (ECF No. 24 ("Motion" or "Mot.")), moving the Court to suppress a phone number obtained pursuant to an Emergency Disclosure Request ("EDR") as well as information subsequently obtained via that phone number. For the reasons set forth below, the Court will DENY Defendant's Motion (ECF No. 24).

### I.    BACKGROUND

#### A.    Factual Background[1]

On November 18, 2024, the Roanoke Police Department ("Roanoke PD") received a report of a missing child. (ECF No. 25 ("Opposition" or "Oppo.") at 1.) The child's mother reported that her daughter had left the family residence three days earlier and had not been heard from since. (*Id.*) Later that day, the child's father provided Roanoke PD with screenshots of Facebook conversations between the missing child and an account labeled "BigShop Ru" (*Id.*)

---

[1] Since the parties do not dispute the relevant facts in this case and since Defendant's argument is purely legal in nature, the Court refrains from entering detailed factual findings on the record. *See* Fed. R. Crim. P. 12(d) (requiring court to state essential factual findings on the record "[w]hen factual issues are involved in deciding a motion.") The Court's recitation of the facts stems from the parties' briefing and is presented here for context.

These conversations indicated that BigShop Ru had offered the child money to come to Richmond and engage in prostitution, and that the child had recently accepted a ride to Richmond in a Lyft taxi ordered and paid for by BigShop Ru. (*Id.* at 1–2.) The conversations also included pictures of the child in various states of undress. (*Id.* at 2.)

Upon reviewing these conversations, Detective Andrew Brokaw of Roanoke PD submitted an EDR to Meta Platforms ("Meta"), Facebook's parent company, seeking "any and all information" concerning the whereabouts of the child and any recent message content. (*Id.*; ECF No. 25-1.) Detective Brokaw emphasized in his request that he believed that the child had been trafficked and was "in danger." (ECF No. 25-1 at 1–2.) In response, Meta provided "relevant, non-content data" concerning BigShop Ru. (*Id.* at 2.) That data included the verified phone number associated with the BigShop Ru account. (Oppo. at 3.) Defendant concedes that this phone number belongs to him. (ECF No. 28 ("Reply") at 3.) Roanoke PD subsequently used Defendant's phone number to obtain additional information from Verizon via another EDR. (Mot. at 2.)

    **B.**    **Procedural Background**

Following his arrest on April 2, 2025, Defendant made his initial appearance before United States Magistrate Judge Mark R. Colombell the following day. (ECF Nos. 6, 7.) On April 15, 2025, a grand jury sitting in the Eastern District of Virginia returned a three-count indictment, charging Defendant with two counts of sex trafficking of children under 18 U.S.C. §§ 1591(a)(1), (b)(2), and (c), and one count of transportation of a minor for prostitution under 18 U.S.C. §§ 2423(a) and 2. (ECF No. 15.) Upon joint motion of the parties, the Court certified Defendant's case as complex for Speedy Trial Act purposes under 18 U.S.C. § 3161(h)(7)(B)(ii) and continued trial of this matter beyond the time limits set in 18 U.S.C. §§ 3161(c)(1). (ECF

No. 22.)

Defendant filed the instant Motion on August 8, 2025. (ECF No. 24.) The United States of America (the "Government") responded in opposition, (ECF No. 25), and Defendant replied (ECF No. 28). On September 30, 2025, the Court held an evidentiary hearing on Defendant's Motion. (ECF No. 29.) The Government called one witness, Detective Andrew Brokaw of Roanoke PD, whose testimony the Court finds credible. Defendant's Motion now stands ripe for judicial review.

## II.     ANALYSIS

Defendant moves to suppress the evidence obtained from Meta and Verizon on Fourth Amendment grounds. Defendant argues that Roanoke PD needed a warrant to obtain Defendant's phone number, because Defendant possessed a reasonable expectation of privacy in that number. (Mot. at 4.) In support, Defendant suggests that phone numbers contain "inherent privacy" and qualify as "personal identifying information." (Reply at 2–3.) He also submits that phone numbers are inherently different from IP addresses, email addresses and Cell-Site Location Information ("CSLI"), which courts have recognized as not justifying a reasonable expectation of privacy and may thus be obtained without a warrant. (Mot. at 3–4.) Defendant also asserts that, given "advancements in telecommunications" and the ubiquity of cell phones, the third-party doctrine no longer shields phone numbers from the Fourth Amendment warrant requirement, since these changes serve to create an actual, subjective expectation of privacy in such numbers. (Reply at 1–3.)

Defendant also raises two additional points concerning the use of EDRs more broadly and the Supreme Court's holding in *Smith v. Maryland*, 442 U.S. 735, 744 (1979).[2] Defendant argues that phone numbers are beyond the scope of what is properly obtained through an EDR, since such requests are "[t]ypically" made to receive "either CSLI or IP addresses," but are not "made" to receive phone numbers. (Mot. at 4.) Defendant also argues that the watershed holding in *Smith v. Maryland*, where the Supreme Court found that phone users did not possess a reasonable expectation of privacy in the phone numbers that they dialed, does not apply to his case. (Reply at 2.) According to Defendant, *Smith* is inapposite, because the ways in which people use phones today differ markedly from how they were used when the Court decided that case. (*Id.*) While phones in 1979 would have been shared by multiple people in a home, cell phones today are "unique to only" their owner and are thus personal and private beyond what the *Smith* court contemplated. (*Id.* at 2–3.)

---

[2] Defendant further argues, in his Motion, that Roanoke PD failed to comply with the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701 *et seq*. While he acknowledges that the SCA permits providers to share customer communications or records with the Government "if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay," 18 U.S.C. § 2702(b)(8), Defendant argues that phone numbers generally fall "outside the scope" of such emergency requests and that, in this particular case, Defendant's phone number "was not relevant to the emergency" and "did not yield any results that were related to the emergency nor helpful in extinguishing the emergency." (Mot. at 6–7.)

The Court struggles to discern whether Defendant raises this SCA-based argument as a separate ground for suppression or merely to bolster his Fourth Amendment claim. The Court need not resolve this question, however, as it finds Defendant's SCA arguments to lack merit. Given the factual predicate, the Court finds that Meta would have been eminently justified, based on the uncontested evidence provided by Roanoke PD, to provide the requested information in a good faith belief that "an emergency involving danger of death or serious physical injury" was occurring. 18 U.S.C. § 2702(b)(8). Defendant's contention that his phone number "was not relevant" to extinguishing that emergency, when Roanoke PD and Meta had every reason to believe that he was the one trafficking a missing child, lacks any logical basis.

4

The Government argues that no Fourth Amendment violation occurred in this case and that suppression therefore stands unwarranted. The Government submits two arguments in support. First, the Government asserts that, under well-established Supreme Court precedent, Defendant possessed no lawful privacy interest in his phone number, placing any alleged intrusion beyond the scope of the Fourth Amendment's protections. (Oppo. at 4–5.) Contrary to Defendant's representations, the Government argues that the third-party doctrine continues to apply with full force to phone numbers, and that Defendant's phone number qualifies as "basic, non-content subscriber information . . . obtained by a third party," which does not trigger Fourth Amendment protections. (*Id.*) In that vein, the Government notes that, while the Supreme Court's recent opinion in *Carpenter v. United States*, 585 U.S. 296 (2018), recognized that persons may retain a reasonable expectation of privacy in their CSLI, *Carpenter* also expressly reaffirmed the third-party doctrine's application to telephone numbers. (*Id.* at 4 (citing *Carpenter*, 585 U.S. at 309).) Second, the Government submits that, even if Defendant had a lawful privacy interest in his phone number, the exigent circumstances present in this case justified Roanoke PD's EDR and Meta's disclosure of Defendant's phone number without a warrant, given the clear and present danger to the victim. (*Id.* at 5–7.)

The Court agrees with the Government on both counts. As explained below, Defendant did not possess a reasonable expectation of privacy in his phone number under existing case law. Defendant's arguments stand in direct tension with Supreme Court precedent and fail to support a departure therefrom. Furthermore, even if Defendant's phone number were subject to Fourth Amendment protections (which it is not), the Exigent Circumstances Exception to the Fourth Amendment's warrant requirement would shield the Government's and Meta's actions here. Police were seeking to locate and rescue a missing minor, who was lured away from her home

and was likely being sex-trafficked.  The Court struggles to imagine a scenario more deserving of the exception's application than this one.

### A.     Reasonable Expectation of Privacy

The Fourth Amendment protects "against unreasonable searches and seizures."  U.S. Const. amend. IV.  A search that infringes on "an expectation of privacy that society is prepared to consider reasonable" is unreasonable.  *United States v. Castellanos*, 716 F.3d 828, 832 (4th Cir. 2013) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).  "In order to demonstrate a legitimate expectation of privacy," a defendant "must have a subjective expectation of privacy."  *United States v. Bynum*, 604 F.3d 161, 164 (4th Cir. 2010).  That subjective expectation of privacy, in turn, must be "objectively reasonable; in other words, it must be an expectation that society is willing to recognize as reasonable."  *United States v. Bullard*, 645 F.3d 237, 242 (4th Cir. 2011) (internal quotation marks omitted).  Thus, the Fourth Amendment only applies to searches where "the person who claims the protection . . . has a legitimate expectation of privacy in the invaded place."  *Castellanos*, 716 F.3d at 833 (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)).  The burden of demonstrating such a legitimate expectation rests with the defendant.  *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980).

The Supreme Court has long recognized that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties."  *Smith*, 442 U.S. at 744.  This so-called third-party doctrine "largely traces its roots to [*United States v.*] *Miller,*" where the Supreme Court rejected a Fourth Amendment challenge to a Government subpoena for bank records in conjunction with an investigation for tax evasion.  *Carpenter*, 585 U.S. at 308 (citing *Miller,* 425 U.S. at 440).  The Court concluded that the defendant had "take[n] the risk, in revealing his affairs to another, that the information [would] be conveyed by that person to the

6

Government," and that therefore, the Fourth Amendment would not protect this information. *Miller*, 425 U.S. at 443.  Three years later, the Court applied the same principles in the context of a pen register, a device that records outgoing phone numbers dialed on landline telephones. *Smith*, 442 U.S. at 742–45.  The Court found that the use of such a device did not constitute a search for Fourth Amendment purposes, based on the Court's "doubt that people in general entertain any actual expectation of privacy in the numbers they dial" and its finding that such an expectation "is not one that society is prepared to recognize as reasonable," since phone numbers are "voluntarily conveyed" to the phone company when dialed, thus "expos[ing] that information to [the phone company] in the ordinary course of business." *Id* at 742–44.

In the face of significant technological advancements and the newfound ubiquity of cell phones, the Supreme Court reengaged with the third-party doctrine in *Carpenter v. United States*. There, the Court recognized a reasonable expectation of privacy (and thus an exception to the third-party doctrine) in CSLI, a form of data obtained from cell phone towers that conveys "not just dialed digits, but a detailed and comprehensive record of [a] person's movements." *Carpenter*, 585 U.S. at 309.  In recognizing this exception, the Court repeatedly emphasized that CSLI data conveys information about "a person's past movements," which it found to constitute a "new phenomenon" that conflicted with the earlier recognition, by a majority of Justices, "that individuals have a reasonable expectation of privacy in the whole of their physical movements." *Id.* at 310 (citing *United States v. Jones*, 565 U.S. 400, 430 (2012) (Alito, J., concurring in judgment); *id.* at 415 (Sotomayor, J., concurring)).  The Court emphasized that this carve-out was "not about 'using a phone' or a person's movement at a particular time," but rather concerned "a detailed chronicle of a person's physical presence compiled every day, every moment, over several years." *Carpenter*, 585 U.S. at 315.  In the same vein, the *Carpenter* court

7

expressly affirmed that "the third-party doctrine [still] applies to telephone numbers" and that its holding "do[es] not disturb the application of *Smith*." *Id.* at 309, 317.

Defendant asks this Court to do precisely what the Supreme Court refrained from doing in *Carpenter*: to "disturb the application of *Smith*" and find that the third-party doctrine no longer applies to phone numbers. *Id*. In light of binding precedent to the contrary, the Court rejects Defendant's invitation. Defendant does not claim that he was coerced into providing his phone number when he signed up for his Facebook account. As such, the Court presumes that he "voluntarily conveyed" his "numerical information" to Meta, placing him squarely beyond any legitimate expectation of privacy under *Smith*. 442 U.S. at 744. As the Supreme Court clarified in *Carpenter*, *Smith* remains good law — with the sole exception of CSLI (not at issue in this case), its principles continue to govern cases like this one, where a defendant voluntarily shared information with third parties.[3] As such, Defendant seeks in vain to assert a reasonable expectation of privacy in his phone number under the Court's Fourth Amendment jurisprudence.

Defendant's arguments in support of overturning this jurisprudence prove similarly unpersuasive. Defendant repeatedly refers to phone numbers as "private information" with "inherent privacy" and cites the "actual (subjective) expectations" of privacy that he believes people to possess with regard to their cell phone numbers. (Mot. at 4; Reply at 1.) He also cites the fact that more people have their own phone numbers today than in 1979, when *Smith* was

---

[3] To the extent that Defendant argues that *Carpenter*'s holding covers cell phone numbers in addition to CSLI, the Court disagrees. *Carpenter* emphasizes, repeatedly, the unique nature of CSLI and the narrowness of its holding, while underlining that the Court "do[es] not disturb the application of *Smith* and *Miller*" and refrains from reaching other records "that might incidentally reveal location information." *Carpenter*, 585 U.S. at 316. Defendant's arguments about the "technological advancements" in phone technology and his conclusory assertions that phone numbers now constitute "personal identifying information" fly in the face of the Supreme Court's clear pronouncements in *Carpenter* and fail to persuade the Court. (Reply at 1, 3.)

decided. (Reply at 2–3.) However, Defendant provides no legal support for his claim that, in the Fourth Amendment context, courts treat phone numbers differently today than in 1979. His claims of "privacy" in his phone number also stand entirely undermined by the fact that he voluntarily shared his phone number — private or not — with Meta, and that in doing so, he evidently assumed the risk that the "company would reveal to police" that information. *Smith*, 442 U.S. at 744. While Defendant argues that phone numbers are categorically beyond the scope of an EDR, Defendant undermines his own argument by asserting that EDRs may "extend so far as subscriber information." (Mot. at 4.) Here, Defendant's phone number forms an integral part of the "subscriber information" that he provided to Meta, and that Meta subsequently provided to Roanoke PD pursuant to its EDR; even under Defendant's theory, the Court struggles to find any impropriety here. Finally, the Court rejects Defendant's argument that § 2702(b)(8) of the SCA fails to apply to this EDR, because his phone number "was not relevant to the emergency" and didn't ultimately help police efforts in resolving the emergency. Obtaining Defendant's number was very much relevant to Roanoke PD's attempts to find the missing child and prevent her from being sex trafficked, as it may well have helped police locate him. Furthermore, the phone number's actual impact on police efforts to resolve an emergency fails to constitute a part of the relevant inquiry, since the SCA only requires that a provider, in good faith, believed that an emergency involving danger of death or serious physical injury was ongoing and would require "disclosure without delay." 18 U.S.C. § 2702(b)(8). Given the facts as presented, the Court easily finds that Meta could have reasonably believed this to be true.

      For all of these reasons, the Court rejects Defendant's argument that he possessed a reasonable expectation of privacy in his phone number and that Meta's disclosure of his number violated his Fourth Amendment rights. The Court will deny Defendant's Motion on this basis.

### B. The Exigent Circumstances Exception to the Fourth Amendment's Warrant Requirement

While Government searches generally require a warrant to qualify as "reasonable" for Fourth Amendment purposes, "the Supreme Court has recognized certain exceptions to the warrant requirement." *United States v. Hobbs*, 24 F.4th 965, 969 (4th Cir. 2022). The Exigent Circumstances Exception constitutes one such exception, permitting warrantless searches where the Government demonstrates a "compelling need for official action and no time to secure a warrant." *Id.* (citing *Mitchell v. Wisconsin*, 588 U.S. 840, 849 (2019)). The need to "protect individuals who are threatened with imminent harm" presents one such recognized "compelling need." *United States v. Curry*, 965 F.3d 313, 321 (4th Cir. 2020) (en banc) (quoting *Carpenter*, 585 U.S. at 320); *see also United States v. Yengel*, 711 F.3d 392, 396 (4th Cir. 2013) (recognizing that, when law enforcement faces "an immediate and credible threat or danger," courts consider it "inherently reasonable . . . to act without a warrant"). To assess whether the Exigent Circumstances Exception applies, Fourth Circuit courts weigh various factors, including the nature of the threat or danger and its immediacy, the degree of urgency, and whether the Government held an objectively reasonable belief that an emergency existed. *Yengel*, 711 F.3d at 397. Such belief must be based on "specific articulable facts and reasonable inferences that could have been drawn therefrom." *Id.* Courts must also consider the totality of the circumstances at hand. *Curry*, 965 F.3d at 321.

Based on the uncontested facts, the Court finds that Roanoke PD's EDR for Defendant's phone number constitutes a reasonable search under the Exigent Circumstances Exception to the Fourth Amendment's warrant requirement. This is not a close call. Police were seeking to locate and rescue a minor who had been missing for three days, and whom they reasonably believed to have been lured away from her home to be sex trafficked. This belief was based on

10

specific communications in which the victim was promised sex work and transportation, as well as naked pictures of the minor victim contained within these communications. Unless police could locate her, and quickly, she stood subject to "imminent harm" and any number of "immediate and credible threat[s] or danger[s]." *Curry*, 965 F.3d at 321; *Yengel*, 711 F.3d at 396. Under such circumstances, obtaining information about the person who had lured her to Richmond constituted an obvious and reasonable step in the police's urgent quest to rescue her from imminent danger. As such, and given the acute urgency of the situation and the gravity of the harm faced by the victim, the Court finds the relevant *Yengel* factors satisfied and the Exigent Circumstances Exception applicable to Roanoke PD's EDR to Meta, rendering the search reasonable for Fourth Amendment purposes. The Court will deny Defendant's Motion on these grounds as well.

### III.   CONCLUSION

For the reasons discussed, the Court finds that no violation of Defendant's Fourth Amendment rights occurred as a result of Roanoke PD's EDR to Meta and Meta's provision of Defendant's phone number in response to that request. Accordingly, the Court will DENY Defendant's Motion to Suppress. (ECF No. 24.)

An appropriate order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Date: December 9, 2025